# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES ANDREWS,<br><br>    Plaintiff,<br><br>    v.<br><br>JON BURGE; DANIEL MCWEENY; RAYMOND MADIGAN; LEROY MARTIN; RICHARD BRZECZEK; WILLIAM MERRITT; RICHARD M. DALEY; RICHARD DEVINE; CITY OF CHICAGO, ILLINOIS; and COOK COUNTY, ILLINOIS,<br><br>    Defendants. | No. 08 C 5874<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Andrews has alleged a pattern and practice of torture and abuse during interrogations of criminal suspects at the Area Two Detective Violent Crimes Unit of the Chicago Police Department. Andrews seeks to recover damages for the more than 24 years he says he was wrongfully imprisoned as a result of Defendants' unconstitutional conduct and for the unconstitutional policies and procedures that allowed those illegal actions to occur. Specifically, Andrews claims that over the course of approximately 18 hours on April 26-27, 1983, under the coordination, direction, and supervision of Defendant former Chicago Police Lieutenant Jon Burge, Defendant former Chicago Police Commander of Area Two Leroy Martin, and Defendant former Chicago Police Superintendent Richard Brzeczek, Defendants former Chicago Police Detectives Daniel McWeeny and Raymond Madigan physically, verbally, and psychologically tortured Andrews until he confessed to two murders that he did not commit.

## I. Factual Background[1]

### A. Policy and Practice of Torture at Area Two

Plaintiff alleges that from the time Defendant Burge was placed in charge of the Violent Crimes Unit at Area Two in 1981, Burge instituted a policy and practice pursuant to which he and detectives working under his command tortured defendants to extract confessions. In February 1982, Defendant Brzeczek sent Defendant Daley a letter advising Daley of allegations that Chicago Police Detectives in Area Two were involved in the torture of Andrew Wilson. Brzeczek relayed to Daley that Dr. John Raba examined Wilson after he had been in the custody of Burge at Area Two and determined that Wilson had been tortured. Dr. Raba called for "a thorough investigation of this alleged brutality."

During the course of a subsequent investigation, Daley provided the Brzeczek letter to Defendant Devine. Neither Daley, Devine, nor Brzeczek took any actions to investigate the allegations of torture surrounding Wilson. Plaintiff further alleges that Defendant Martin was aware of the accusations contained in the Brzeczek letter.

According to Plaintiff, other allegations of torture in Area Two put Defendants Brzeczek, Martin, Daley, and Devine on notice that Defendant Burge and his subordinates had instituted the practice of torture at Area Two. From 1981 - 1988, at least 55 persons (including Plaintiff) alleged that they had been tortured at Area Two. Many of those persons filed motions to suppress outlining their allegations.

---

[1] For purposes of this opinion, I accept as true all of Plaintiff's well-pled factual allegations and draw all reasonable inferences from those facts in Plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002).

B. *Plaintiff's Custodial Interrogation and Confessions*

On April 26, 1983, Andrews voluntarily accompanied two Chicago Police officers to Area Two after they visited Andrews' home and told him that they wanted to question him about a dog fight in the neighborhood. After arriving at Area Two, the officers placed Andrews in an interrogation room and handcuffed him to a metal ring attached to the wall. Shortly thereafter, Defendants McWeeny and Madigan began questioning Plaintiff about the murders of Floyd Jenkins and Keith Lewis. When Andrews denied any involvement in the murders, Defendants McWeeny and Madigan began using physical violence and psychological abuse to coerce Andrews into making incriminating statements. Specifically, McWeeny and Madigan yelled at Andrews, called him names, violently grabbed him by the collar of his shirt, repeatedly struck him with a police flashlight, and punched him repeatedly with their fists.

After many hours of subjecting Andrews to these abusive interrogation tactics, both detectives left the room. A short while later Madigan returned with a pen and some paper and attempted to coach Andrews on the details of the murders. Madigan went over the story several times, outlined what he wanted Andrews to include in a statement to the State's Attorney, and warned Andrews that he must answer the questions asked by the State's Attorney "correctly." Throughout the "coaching," Madigan struck Andrews several more times with his fist and with his police flashlight.

After Madigan finished coaching Andrews, Defendant Merritt entered the interrogation room. Andrews did not provide Merritt with a confession, nor did he relate the "correct" story. The interview was stopped. Merritt said to Madigan words to the effect of "I thought you told me he was ready. He's not ready."

3

A short while later, Madigan called Merritt and McWeeny, along with a court reporter, back into the interrogation room. While Madigan remained in the room, Andrews confessed to murdering one of the two victims by reciting the "story" that Madigan had presented to him. By this time, Andrews had been in the interrogation room for eight hours.

After the first confession, Madigan and McWeeny started the process of physical and psychological torture all over again. About four hours later, Andrews confessed to the second murder.

At 3 a.m. on April 27, 1983, Andrews made a phone call to his mother, Grace Andrews, from the police station. He told her he had been beaten and kept in an interrogation room since noon of the previous day. He told his mother that the officers would have killed him if he had not signed the confessions.

### C. *Plaintiff's Criminal Trials*

At suppression hearings in October 1984, Andrews testified that he had been coerced, through torture, into giving confessions. Judge Philip J. Carey denied Andrews' motions to suppress the confessions, and Andrews was convicted of the two murders. During both the Lewis and Jenkins trials, prosecutors presented no physical evidence linking Andrews to the alleged crimes. Andrews alleges that during the trials Defendants hid evidence from Andrews and from the court that Defendant Burge and certain detectives under his command (including Defendants Madigan and McWeeny) had been accused of torturing other defendants. Following the trials, Judge Carey sentenced Andrews to two natural life terms in prison.

*D. Plaintiff's Exoneration*

Andrews further alleges that over the next decade evidence accumulated that Defendants Burge, Madigan, and McWeeny, as well as other Area Two detectives, engaged in systematic torture of defendants in order to unconstitutionally extract confessions. Indeed, by March 1999, a federal judge recognized that "[i]t is now common knowledge that in the early to mid-1980s Chicago Police Commander Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions." *United States ex. rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999).[2]

Based on this new evidence, Andrews filed a post-conviction petition in May 2004, arguing that had Judge Carey known in October 1984 what is now known about the regime of torture in Area Two, Judge Carey would have granted Andrews' motion to suppress. Andrews further argued that because there was no physical evidence linking him to either crime, had the confessions been suppressed he would not have been convicted. After an evidentiary hearing on Andrews' post-conviction petition, Cook County Circuit Court Judge Thomas Sumner vacated Andrews' murder convictions on October 15, 2007, finding that Andrews "clearly prove[d] that [his] constitutional rights were violated" and ordering new trials in each of the cases.

On November 21, 2007, Andrews posted bond and was released from incarceration.[3] In February 2008, the State *nolle prossed* the criminal cases against Andrews.

---

[2] In making this observation the Court did not take judicial notice under Fed. R. Evid. 201. Instead Judge Shadur relied on reported decisions of facts stated in other reported decisions. In any event, the reference was to common knowledge in 1999 of what one named defendant in this case and other unnamed officers were doing in the early to mid-1980s.

[3] Andrews had been incarcerated from the time he was taken into custody on April 26, 1983.

*E. Civil Case Filed in Federal District Court*

In October 2008 Andrews filed a fourteen-count complaint against former Lieutenant Jon Burge, former Chicago police detectives Daniel McWeeny and Raymond Madigan, former police Superintendent Richard Brzeczek, former police Commander Leroy Martin, former Assistant State's Attorneys William Merritt and Richard Devine, former State's Attorney Richard Daley, the City of Chicago, and Cook County, Illinois alleging violations of Andrews' civil rights under 42 U.S.C. § 1983 and state law, arising out of Andrews' arrest, interrogation, and prosecution for the murders of Floyd Jenkins and Keith Lewis. I now consider all Defendants' Rule 12 motions to dismiss.[4]

## II. Standard of Review

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. In ruling on such a motion, I accept as true all well-pleded factual allegations in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). To state a claim, the complaint need only contain a

---

[4] Defendants City of Chicago, Daley, Burge, McWeeny, Madigan, and Martin ("City Defendants") filed a joint motion to dismiss. Defendant Brzeczek filed a separate motion to dismiss, setting forth an individual argument but also adopting certain arguments made by the City Defendants. Plaintiff filed a single response to the pending motions to dismiss by the City Defendants and Defendant Brzeczek. That response does not address the arguments put forth by Defendant Daley in the City Defendants' motion because Defendant Daley is sued in his individual capacity for acts and omissions during his tenure as Cook County State's Attorney. Defendant Daley also adopted Defendant Devine's arguments in the County Defendants' motion to dismiss, filed on behalf of Defendant Devine and Cook County, Illinois. Defendant Merritt filed a separate motion to dismiss, putting forth individual arguments and also adopting several arguments made by the City and County Defendants. Plaintiff filed a single response to the pending motions filed by the Defendants Cook County, Merritt, Devine, and Daley.

"short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That said, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## III. Discussion

A plaintiff may only bring a Section 1983 claim against those individuals personally responsible for the constitutional deprivation. *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). A plaintiff may not rely on the doctrine of respondeat superior to hold a supervisor liable for the misconduct of his subordinates, but rather the supervisor must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct. *Id.* at 614-15. A plaintiff may neither rely on negligent supervision of subordinates as an authorized ground of liability under Section 1983. *Wilson v. City of Chicago*, 6 F.3d 1233, 1241 (7th Cir. 1993).

Various defendants move to dismiss the complaints against them for failure to properly allege their personal involvement. There is some irony here. Defendants argue that Plaintiff is wrongfully accusing them of civil wrongs, which in this case bears a close family resemblance to Plaintiff's own experience of wrongful accusation and conviction.

*A. The State's Attorneys*

Richard M. Daley was State's Attorney of Cook County during the prosecution of James Andrews. Richard Devine was the First Assistant State's Attorney and, later, became State's Attorney. Devine was not employed in the prosecutor's office when Andrews was tried. Both are sued as individuals.[5]

The basis for this suit against these two defendants is a letter that Richard Brzeczek, the Chicago Police Superintendent, wrote to Daley stating that there were allegations that one Andrew Wilson was tortured while in custody at Area Two. Daley and Devine discussed the letter with each other but did not further investigate the matter. Further, during 1981-1988, 55 persons made allegations that they had been tortured at Area Two. When facing criminal charges, many of those persons filed motions to suppress that outlined their allegations of torture. Prosecutors working under the State's Attorney were responsible for responding to those motions to suppress. Because those prosecutors reported directly or indirectly to Defendants Daley and Devine, Plaintiff alleges that Daley and Devine knew or should have known of the many instances where defendants claimed they had been tortured in Area Two. Daley and Devine are said to be liable because they failed to investigate allegations after being informed that such allegations were being made.

Daley and Devine claim absolute immunity to which they are entitled even if they suppressed evidence or offered false testimony while personally prosecuting Andrews. This is settled law. *Imbler v. Pachtman,* 424 U.S. 409 (1976); *Briscoe v. LaHue,* 663 F.2d 713 (7th Cir. 1981).

---

[5] The allegations against Daley are based on his conduct as a prosecutor and not as a Mayor. Cook County is sued only to ensure indemnification if Andrews prevails on his claims. I do not believe Andrews seeks anything more of the County.

An exception to prosecutorial immunity exists when prosecutors perform functions normally performed only or mainly by a police officer. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273-74 (1993). Plaintiff cites this case but does not offer any grounds to apply it here. One reason for this is that Plaintiff argues that Daley and Devine are liable precisely because they did not investigate the allegations. An investigation of widespread violations of law by Area Two officers is an early stage investigation of criminal conduct by those officers. Andrews wants a court to hold a prosecutor liable for failing to do what the Supreme Court of the United States has held not to be within the core functions of the prosecutor.[6]

There is, too, the fact that prosecutors are exercising prosecutorial judgment when they decide, say, not to open a grand jury investigation into allegations of wrongdoing. A prosecutor will, it is common knowledge, receive many complaints from many sources, some will be lunatic

---

[6] Whatever practical force the argument for liability might have is particularly weak here. Daley and Devine were not in possession of information unavailable to others. The complaint states that many alleged torture and their claims were resolved, in many cases, by judges in public hearings. A prosecutor does not subject himself to liability by failing to launch an investigation and choosing, instead, to remit the issue to judicial decision. A prosecutor's decision to be an advocate in opposition to the claims of a defendant is well within his zone of immunity. *See Kalina v. Fletcher,* 522 U.S. 118 (1997). A prosecutor would know too that other law enforcement agencies had the power to undertake investigations of allegations made in open court. After all, Andrews does not claim that either Daley or Devine knew what happened in his case, he simply claims that upon being informed of allegations of torture in another murder case, they had a duty to investigate Andrews' case. I assume, for purposes of this ruling, that such an investigation would have resulted in vindication of the allegations. I also note that the theory that Daley or Devine is liable because he failed to intervene (as a police officer would be obliged to intervene to prevent his partner from unlawfully battering an arrestee) is based on a premise that the prosecutor is like another police officer. In Illinois (and, in every state of which I am aware) a prosecutor does not have police powers, nor do prosecutors have command of police operations, though at times courts act as if they do. The only opinion that supports the prosecutor's duty to intervene is quite unpersuasive. Judge Aspen was clearly correct in deciding that the duty to intervene applicable to police officers is not to be imposed on prosecutors. *Gordon v. Devine,* No. 08 C 377, 2008 WL 4594354, at * 17 (N.D. Ill. Oct. 14, 2008).

9

ravings and some will be legitimate but trivial. Others will have surface legitimacy (or real legitimacy), and a prosecutor may still elect not to pursue such complaints. The refusal to do so may be based on issues of time and expense, of available expertise, of the likelihood of success, of the perceived neutrality of the prosecutor's office, and of the availability of other remedies – such as suppression hearings in this case.[7] The prosecutor may make the wrong call, even a spectacularly wrong call, on whether to launch a prosecutorial investigation, but the established policy does not require a prosecutor to answer in damages for that decision.

There are other theories offered as a basis for liability of Devine. They are weightless. Neither Devine nor Daley took any personal role in the prosecution of Andrews so the ordinary obligations to disclose exculpatory evidence do not apply to them under a *respondeat superior* theory. Section 1983 claims require personal involvement in the prosecution. Devine was not a prosecutor at all when Andrews' case was adjudicated. Daley was the State's Attorney but did not try the case himself. The association between a chief prosecutor and his or her assistants does not make a bare claim of conspiracy plausible under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951-52 (2009).

Cases in which prosecutors have been held liable for failure to disclose exculpatory evidence involve far different circumstance than found here. In *Houston v. Partee,* 978 F.2d 362 (7th Cir. 1992), the prosecutor knew that others had confessed to the crime for which his defendant had been convicted. The exculpatory evidence here is the fact that a physician opined that the physical condition of Wilson was consistent with Wilson's allegations of torture. There

---

[7] The claims here concerning allegations about Wilson's interrogation (as well as Andrews' allegations, of which Devine and Daley were unaware) could have been and were heard and decided in a courtroom.

is nothing in the Brzeczek letter about Andrews or about a pattern or practice of torture in Area Two. It is difficult to see how an allegation of abuse against Wilson exculpates Andrews under these circumstances. It is not alleged that Daley or Devine knew of evidence of widespread torture at Area Two while Andrews' case was being prosecuted. Any duty to disclose the opinion of the doctor corroborating Wilson's claim would run to Wilson, not Andrews.

A claim against Daley and Devine for failure to train assistant prosecutors about the duty to disclose exculpatory information is barred by immunity. Decisions about what training to provide come under the immunity umbrella. *Van De Kamp v. Goldstein,* 129 S. Ct. 855 (2009).

The state law claims are barred under prosecutorial immunity in Illinois. *White v. City of Chicago,* 861 N.E. 2d 1083 (Ill. App. Ct. 2006); *Coleson v. Spomer,* 334 N.E. 2d 344, 347 (Ill. App. Ct. 1975). This is a well-understood principle in Illinois and, under pendent jurisdiction, I dismiss them rather than sending them to state courts to avoid the unnecessary cost in time and money to reach an inevitable dismissal.

### B. The Assistant State's Attorney

The crucial allegation against Merritt, crucial because it is the only one that might allege an act outside the umbrella of prosecutorial immunity, is that he was at Area Two and witnessed Andrews refuse to make a confession. This occurred after, it is alleged, detective Madigan used force against Andrews and coached him on what to say. Merritt entered the room, I infer, after Madigan told Merritt that Andrews was ready to confess. Andrews did not confess. The interview was stopped. Merritt said to Madigan words to the effect of "I thought you told me he was ready. He's not ready." Merritt left the room. A short while later Madigan called Merritt back into the interrogation room, at which time Andrews confessed to murdering one of the two victims – the story Madigan wanted from him.

11

It is clear from the response of Andrews to the motion to dismiss that his lawyers understand that Merritt's statement to Madigan does not, in itself, allow a trier of fact to conclude by a preponderance of evidence that Merritt knew of the beatings. The response contains allegations that Merritt knew what was going on and participated in it, acting as an investigator and not a prosecutor. But Andrews offers only the conclusion, based on information and belief, that Merritt knew of the coercion. The statement of Merritt could be an expression of annoyance toward a detective who told him that Andrews was ready to confess when he was not, causing Merritt to engage in a fruitless effort at receiving and recording a confession. The ordinary dividing line between police work and prosecutor's work is that police interrogate to obtain a confession and the prosecutor takes the confession by asking questions as he or she would put to a witness examined in a courtroom, with questions and answers taken down by a court reporter. There is no allegation that Merritt departed from this practice.[8]

The basis for the case against Merritt is that he was present at Area Two when Andrews was beaten and must have known. A case based on what someone must have known is not, in itself, hopeless, though few lawyers like to take such claims to trial. To make plausible a claim that the prosecutor must have known requires more than is alleged here. There has been an extensive investigation of what was done at Area Two and reports written. Was Merritt a frequent flyer at Area Two investigations? Did he engage in avoidance behavior for fear of what he might learn? Had he prosecuted other cases where similar claims were made? Did Andrews' physical appearance show clear evidence of physical abuse? It is clear that Andrews did not

---

[8] There is no dispute between the parties that Andrews, in his own sworn testimony at his post-conviction hearing, said that Merritt did not use physical battery or threaten physical harm against Andrews and that Andrews did not complain to Merritt about the beatings he received.

complain of physical abuse. It may be that Andrews thought that Merritt was a partner in a scheme to coerce a confession from him and, so, regarded complaint as futile. But his thinking this is so is not evidence that it is so. I do not reject the proposition that a prosecutor would knowingly aid and abet police violations of a defendant's rights; some have done so. But mere presence at the Area Two facility while coercion was going on outside the prosecutor's presence is not enough to make a plausible complaint that the prosecutor crossed the line into illegality.

The claim that Merritt concealed exculpatory evidence from Andrews is a makeweight which, I think, Andrews makes no effort to defend since Andrews knew exactly what was done to him. He was present and Merritt was not.

Taking a court reported statement from a defendant is an act within a prosecutor's (as well as a police officer's) duties. Andrews' argument is based on an error in reading *Buckley v. Fitzsimmons,* 509 U.S. 259 (1993). The Supreme Court did not, in *Buckley*, hold that police functions and prosecutor functions were mutually exclusive. *Buckley* noted that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State are entitled to the protections of absolute immunity." 509 U.S. at 273. The reality is that both police and prosecutors evaluate evidence to determine what, if any, charges should be brought. It is within the proper role of an advocate for the State to take a court reported statement, as well as to see and hear the defendant give the statement, rather than simply take the word of the police that the defendant has confessed. The prosecutor acts within his core functions when he evaluates the evidence gathered by police and, in the case of a confession, takes steps to see that the words of the defendant are properly

preserved. A prosecutor should not be deprived of immunity because, in a case of murder, he decides to hear what the defendant has to say for himself.[9]

The state law rules governing prosecutorial immunity are, as everywhere or nearly everywhere, at least as broad as those found in federal law and the state law claims against Merritt are also dismissed.

*C. Former Police Superintendent Richard Brzeczek*

The foundation for the claims against Brzeczek (apart from the boilerplate "all defendants" language) is that he was Superintendent of Police from 1981 through 1983 and knew of a policy of torture at Area Two, which knowledge was manifested by his letter to the State's Attorney concerning a physician's findings with respect to Andrew Wilson. Even absent that letter, he was aware or should have been aware that 55 persons or more alleged torture.

It is not alleged that Brzeczek ever personally tortured anyone, nor is it alleged he was present at Area Two when anyone was tortured. There is no claim of direct involvement in forbidden conduct. The claim that he was "potentially present" in Area Two while Andrews was there is empty of legal significance. I would take it as a given that the Superintendent was present at Area Two from time to time during his period in office, but Andrews is careful not to allege that Brzeczek was present at any time material to this case. And, as must be clear from my analysis of the claims against Merritt, mere presence at Area Two even at the time Andrews was

---

[9] There are cases in which claims against prosecutors are allowed to proceed, but those cases involved conduct that went beyond the taking of a statement from a defendant. In *Buckley* the prosecutor was part of a task force co-managed by the Sheriff and the State's Attorney. In *Johnson v. Dossey,* 515 F.3d 778, 783 (7th Cir. 2008), the prosecutor "was part of the investigation of the fire" for a period of months before it was decided to bring charges. No case was cited to me, or found, in which a prosecutor was found liable for participating in the formal recordation of a confession without a plausible allegation that the prosecutor knew or should have known that the confession was coerced by police outside his or her presence.

in custody does not allow, by itself, an inference that the Superintendent knew what was happening to Andrews. There is no claim that Brzeczek was involved in any way in the prosecution of Andrews, whose coerced confession claims were made after Brzeczek was out of office.

Sending a letter to the State's Attorney advising of the physician's findings shows only that the Superintendent was aware of one case, not Plaintiff's, in which there was physical evidence of police abuse. Andrews does not say this was improper in itself, probably because it is obviously one correct response to the physician's conclusions. Andrews' point is that evidence that corroborates one Area Two defendant's claim of coercion required Brzeczek to investigate Area Two. This might have some significance, along with other circumstances, if the federal law had not turned its face against *respondeat superior* claims in civil rights cases. But even where such responsibility can be imposed, it is not adequately alleged here since the illegal pattern and practice extended for several years after Brzeczek's time in office. It is not alleged, either, that Brzeczek was ever aware of Andrews' claim when he could have done something about it.

The remaining claims against the Superintendent are so general and broad in their applications that they do not provide adequate notice to Brzeczek of what he has done to require he pay compensation to Andrews. Indiscriminately incorporating every paragraph of every count in other counts, particularly the catch-all counts which usually appear toward the end of the complaint, can result, as it does here, in a complaint that does not tell some of the defendants why they are liable. The structure of this complaint is typical of the problems created by amorphous pleading. There are very specific allegations about what certain named police officers and a prosecutor did with respect to Andrews. The further up the chain of command the complaint goes, the more vague are the grounds for individual liability. It does not help to make

equally general allegations that all defendants conspired with all other defendants and everything alleged against one is alleged against all. In a simpler case, a general conspiracy claim is adequate but not here.

   *D. The Police Officers, Their Commanders, and the City*

Jon Burge, Raymond Madigan and Daniel McWeeney are the primary actors alleged to have harmed Andrews. Madigan and McWeeney inflicted pain on Andrews in order to extract a confession and coached him on what to confess. Burge, the immediate commander of the violent crimes unit, encouraged and sanctioned these methods.

Leroy Martin was the overall commander of Area Two detectives (and later on a Superintendent of Police).

The claims invoke many legal theories to establish Andrews' right to a remedy. Some of them do not work.

Count I alleges a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and damages due for the failure of the police defendants to reveal potentially exculpatory evidence to Andrews. Police come within the ambit of *Brady* when they conceal exculpatory evidence from the prosecutor, but no tort has been perpetrated unless the evidence was unknown to the accused. *See United States v. Lee,* 399 F. 3d 864, 865 (7th Cir. 2005). That the police beat a false (or even a true) confession is exculpatory evidence. Andrews knew all this and raised it in court. *See Harris v. Kuba,* 486 F.3d 1010, 1015 (7th Cir. 2007) (alibi evidence). A police officer who falsely denies that he tortured a confession from an accused has committed a felony since perjury and coercion of a confession are felonies in Illinois (and elsewhere). He has also violated his oath of office in a way that is inexcusable for a law enforcement officer. Civil liability for coercing a confession is also possible, but not for violating the rule in *Brady* or for lying at trial

under *Briscoe v. LaHue,* 460 U.S. 325 (1983). *See Sornberger v. City of Knoxville*, 434 F. 3d 1006, 1028-29 (7th Cir. 2006) (no *Brady* claim where defendant not deprived of evidence held by police or prosecutor that would have helped her question the officers' version of events in court).

Count II is, at bottom and despite protestations to the contrary, a federal malicious prosecution claim barred by precedent, though state courts might offer a remedy. *Smith v. Lamz,* 321 F. 3d 680, 684 (7th Cir. 2003); *Wiley v. City of Chicago,* 361 F.3d 994, 998 (2004).

Count III alleges a violation of the Fifth Amendment rights which are applicable to the States. Count V charges that defendants failed to intervene when coercion occurred in their presence, and Count VII charges that the confession was coerced. All of these are proper claims, but Defendants maintain they come too late. The ordinary statute of limitations for these claims is two years. The acts which form the basis of the claims occurred more than two decades before the complaint was filed.

The statute of limitations may be tolled under the rule of *Heck v. Humphrey,* 512 U.S. 477 (1994). When a successful claim would necessarily impugn the validity of the conviction, any resolution of the claim must await the vacation of the conviction and the termination of the charges. Until the day the charges are dropped, the statute of limitations stops running.

I accept that proof of coercion and coaching of a confession would necessarily impugn the validity of the conviction based upon the plausible allegations of the complaint. It has been plausibly alleged that without the confession Andrews would not be convicted. On the other hand, if Andrews were the victim of excessive force, that would not necessarily impugn the guilty verdict. It is not the force that invalidates the conviction, it is the coercion of the confession without which there is no invalid conviction. Count II is barred by the statute of

17

limitations. Count I is also barred because failure to disclose, in the context of this case, would not impugn the validity of the conviction.

The equal protection count (VI) is not properly pled and I deny the right to amend. I do so because there is nothing to be gained by Andrews by permitting a corrective amendment. That the police officers may have done what they did because Andrews is African-American can be proved even if the separate count does not stand. Proof of racial animus is proof of motive which assists Andrews in convincing a trier of fact that his allegations are true and serves to aggravate damages. If Andrews fails to prove the coerced confession allegations against any of the defendants, the equal protection claim will necessarily fail.

The same considerations seem to me to bear on the status of the sketchy conspiracy claim in Counts IV and X. If the prosecution of Count III fails, then all other counts will fail. *Indianapolis Minority Contractors Ass'n., Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999). The conspiracy charge adds nothing of value to Andrews. Evidence of conspiracy is admissible whether or not conspiracy is formally charged. The conspiracy counts are dismissed with respect to Burge, Madigan and McWeeney.

The one useful purpose of the conspiracy count is that it might allow Andrews to charge Leroy Martin with the acts of the officers at Area Two violent crimes. Martin cannot be held liable under a *respondeat superior* theory in this civil rights case.[10] Martin though is not properly

---

[10] The one problem is that the conspiracy is between the prosecutors and the police to cover up police coercion of confessions but doesn't allege how this is connected to Andrews' coerced confession. The other problem is that this conspiracy is constructed to avoid the application of the intra-corporate conspiracy doctrine which, if it is the rule, would bar a claim that the conspiracy to coerce, or even to cover up, was between various police officers. I decline to express a view on the applicability of the doctrine on which the other judges in this District are substantially divided.

alleged to be either a member of a conspiracy or, more importantly, to have had any personal involvement in coercion in this case. What Andrews argues is that Martin was potentially present at the time of the bad actions. That Martin might have been present, for some reason, is not to allege that he was present or that he knew what was occurring. If Andrews had thought potential presence was enough, he would have been able to charge any police officer in Area Two who might have entered the Area Two violent crimes facility. Andrews has not made these allegations because, in fact, Martin's liability is based on the principle of supervisory liability and nothing else. It is the only fair reading of the complaint against him, and all the counts which name him are dismissed.

With respect to the City of Chicago, I deny dismissal of the *Monell* claim in Count VIII, but I grant dismissal of Counts XII and XIV.

I note in closing that this complaint and the briefing in support of it and against it has in many cases been extravagant. The breadth of the claims worked against clarity and allowed both sides to read the complaint in unconvincing ways and offer arguments that passed like ships in the night. I can understand, given how many judges of our court have faced these issues, that each side tried to mold their pleadings and arguments into a passable imitation of another case which seems to have past muster before another judge. In the end, Andrews' path to any remedy has been obfuscated by this tactic and the process unnecessarily subject to further delay.

**CONCLUSION**

For the foregoing reasons, the motions by Defendants Brzeczek, Devine, Cook County, and Merritt to dismiss are granted. The joint motion to dismiss filed by the City Defendants (City of Chicago, Daley, Burge, McWeeny, Madigan, and Martin) is granted in part and denied in part. In sum, Defendants Daley, Devine, Merritt, Brzeczek, Martin, and Cook County, Illinois are dismissed. Counts I, II, IV, VI, X, and XIII are dismissed. Counts III, V, VII, IX, and XI remain against Defendants Burge, McWeeny, and Madigan only. Counts VIII, XII, and XIV remain against the City of Chicago.

ENTER:

James B. Zagel
United States District Judge

DATE: August 25, 2009